IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

LARRY WILES,                                )
                                            )
            Plaintiff,                      )
                                            )
vs.                                         )   Case No. 12-5053-CV-SW-ODS
                                            )
CAROLYN W. COLVIN,                          )
Acting Commissioner of Social Security,     )
                                            )
            Defendant.                      )

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in January 1957, has an eighth or twelfth grade education,[1] and has prior work experience as an auto body repair technician, tool grinder, and construction worker. He alleges he became disabled on December 15, 2007, due to a combination of thoracic pain and degenerative disc disease. Plaintiff also alleged he suffered from anxiety; the ALJ determined this condition was not severe because it was effectively controlled with medication and Plaintiff does not raise any arguments about this finding.

---

[1] At the hearing Plaintiff testified he had an eighth grade education, R. at 23, and the ALJ found Plaintiff had a limited education, which means he found Plaintiff's education was between the seventh and eleventh grade. R. at 15; 20 C.F.R. § 404.1564. However, there are numerous references in the Record indicating Plaintiff completed high school. E.g., R. at 231 (Plaintiff's application for benefits); R. at 340 (Plaintiff's statement to doctor),

The Record reflects that Plaintiff received medical treatment from Dr. Jeff Honderich for thoracic back pain as far back as March 2003. Dr. Honderich's records do not reflect any changes (much less any deterioration) in Plaintiff's condition near the time of his alleged onset date. For that matter, they do not reflect any changes from March 2003 through March 2008. Dr. Honderich saw Plaintiff eight times in this five year span, and prescribed various medications to alleviate Plaintiff's pain. R. at 254-61.

For much of March 2008 (and part of April) Plaintiff was treated at Northwest Medical Center for what his attorney summarizes as "gastrointestinal ("GI") bleed, respiratory failure and a history of alcohol and opiate abuse." Plaintiff's Brief at 5. These ailments are not alleged to play any role in his claimed disability and need not be discussed further.

Plaintiff filed his claim for benefits in early April 2008, alleging he was disabled due to back pain and the March/April 2008 hospitalization.. R. at 209, 226. In May he underwent a consultative examination performed by Dr. Saad Al-Shathir. The doctor determined Plaintiff demonstrated normal strength, coordination and muscle tone, although Plaintiff's tendon reflexes were 2/4. No deformity, scoliosis, inflammation, or arthritis was noted. Dr. Al-Shathir determined Plaintiff demonstrated tenderness in the intrascapular area of the right shoulder and the lower middle trapezius. R. at 340-43.

In October 2008 Plaintiff saw Dr. Honderich with complaints of anxiety. As noted earlier, the ALJ found (based largely on Dr. Honderich's treatment notes) that Plaintiff's anxiety was controlled with medication and this conclusion is not at issue. However, it is significant to note that Plaintiff did not complain about back pain even though Dr. Honderich had been treating this condition from March 2003 to March 2008. R. at 571-75. In fact, Plaintiff did not say anything to Dr. Honderich about back (or any other) pain until February 2009 – and then Dr. Honderich only noted Plaintiff suffered from "chronic back pain" without further elaboration. R. at 557. Back pain was not mentioned in Dr. Honderich's notes for Plaintiff's next five monthly appointments.

In August 2009, Dr. Honderich noted Plaintiff was "using a putter for a cane" and walked with an abnormal gait. However, Dr. Honderich made no assessment of Plaintiff's condition and provided no treatment. R. at 531-32. In September 2009, Dr.

2

Honderich noted "[Plaintiff] is in no acute distress. He has quite severe traumatic arthritis. He has a very antalgic gait even with his cane. He states that mowing the lawn with a riding mower requires that he break down the operation into 2 days." R. at 527-28. Once again, Dr. Honderich performed no tests related to Plaintiff's back, shoulder, or anything relevant to this disability application, and prescribed no treatment. In October, Dr. Honderich noted Plaintiff was walking with a cane and described him as a "[d]isabled male with anxiety totally controlled," but provided no medical explanation for the conclusion that Plaintiff was disabled. R. at 523-24. He made a similarly unexplained statements in December 2009 and January 2010. R. at 511-16.

February 2010 marks the first time Plaintiff actually sought treatment for pain since March 2008. On this occasion Plaintiff told Dr. Honderich he was experiencing "increasingly whole body pain" and sought a new prescription for Ultram because it had helped "a couple of years ago." Dr. Honderich noted Plaintiff had tenderness in his knees, hips and lumbar region, diagnosed him as suffering from degenerative disease and musculoskeletal pain, and prescribed tramadol (a/k/a Ultram) for the pain. R. at 506. Plaintiff reiterated his complaint in March and reported the medication was not providing relief; Dr. Honderich prescribed Toradol. R. at 501. In April, Dr. Honderich described Plaintiff's panic attacks (but not his back condition) as "disabling." He also noted Plaintiff to be using a cane and walking with a shortened gait. R. at 495. A few days later Plaintiff saw Dr. Jerry Jumper primarily in connection with his panic attacks; he also mentioned that he had back pain but had "never had workup or consultant evaluation on his back." R. at 581.

In May 2010, Dr. Jumper suggested Plaintiff get an MRI of his back. The MRI was performed in July and showed a small disk protrusion at L4-L5 without impingement on the nerve and inflammation at L5-S1 that was "slightly impinging upon the exi[s]ting nerve rootlets . . . without significant effacement or displacement of these structures." R. at 591-92. In June, Dr. Honderich wrote that Plaintiff was "disabled due to failed back surgery," R. at 485, but there is no discussion of a back surgery in Plaintiff's medical history. The administrative hearing was held in August, and no additional medical records were provided.

3

At the hearing, Plaintiff testified he is in constant pain, can stand for only fifteen minutes, and cannot walk more than fifty yards. The pain is primarily felt in the area below his shoulder blades, but sometimes shoots into his legs. He spends most of his day in his bedroom. R. at 26-33.

The ALJ found Plaintiff's testimony was not fully credible for several reasons, including: the lack of objective medical evidence, the lack of medical treatment (both in terms of treatment sought and treatment provided), and inconsistencies in Plaintiff's various statements. He found Plaintiff retained the residual functional capacity ("RFC") to perform the full range of "light work" as that phrase is defined in 20 C.F.R. § 404.1567(b). Based on a report from a vocational expert that had been accepted into evidence, the ALJ found Plaintiff could not return to his past relevant work because all of that work was performed at higher exertional levels. The ALJ then consulted the Medical-Vocational Guidelines which, given the ALJ's finding Plaintiff could perform the full range of light work and had no nonexertional limitations, directed a finding that Plaintiff is not disabled.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

4

## A. Plaintiff's Credibility

Plaintiff contends the ALJ failed to properly evaluate his credibility. The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>  1. The claimant's daily activities;
>  2. the duration, frequency and intensity of the pain
>  3. precipitating and aggravating factors;
>  4. dosage, effectiveness and side effects of medication;
>  5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. Plaintiff correctly states the ALJ could not dismiss his subjective complaints based solely on the absence of medical data to support them, but (1) this is not what the ALJ did and (2) the absence of medical support remains a valid factor to be

5

considered when assessing a claimant's credibility. Here, the absence of medical evidence was a factor – but not the sole factor – cited by the ALJ. In addition, Plaintiff did not complain about his back pain for an extended period of time, even though he was seeing the doctor who had treated his back previously. The absence of complaints to a treating doctor is a substantial basis for rejecting Plaintiff's claim that he was suffering from debilitating pain.

### B. Determination of Plaintiff's RFC

Plaintiff contends the RFC was improperly ascertained because there was no medical evidence supporting the ALJ's determination. While some medical evidence is necessary to prove a person's RFC, the burden of proving the RFC is the claimant's. E.g., Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012) (citing Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010)). Plaintiff failed to present any evidence that his RFC is less than that found by the ALJ. For that matter, Plaintiff has barely presented any medical evidence at all – perhaps because Plaintiff did not consistently complain about his back pain. There was no evidence presented suggesting Plaintiff's RFC was more restrictive than that found by the ALJ. Based on the evidence that is actually in the Record, the ALJ's determination is supported by substantial evidence.

In the context of this argument Plaintiff also suggests the ALJ should have accepted Dr. Honderich's assessment Plaintiff was disabled. The Court rejects this argument for several reasons. First, while a treating physician's opinion is usually entitled to deference, a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g., E.g., Anderson v. Astrue, 696 F.3d 790, 793-094 (8th Cir. 2012); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). Here, there is no data supporting Dr. Honderich's conclusions. Second, it is not clear that Dr. Honderich was treating Plaintiff's back after March 2008. While he prescribed pain medication on Plaintiff's request, Dr. Honderich did not appear to perform any examinations, tests, or other forms of medical diagnosis. Third, his bare conclusion that Plaintiff was disabled

6

is not a medical opinion, so no deference was due.  E.g., Brown v. Astrue, 611 F.3d 941, 952 (8th Cir. 2010).

### III.  CONCLUSION

The Commissioner's final decision is supported by substantial evidence in the Record as a whole, so it is affirmed.
IT IS SO ORDERED.

                                                /s/ Ortrie D. Smith
                                                ORTRIE D. SMITH, SENIOR JUDGE
DATE: May 10, 2013                                UNITED STATES DISTRICT COURT